573 So.2d 1244 (1991)
SENECA RESOURCES CORPORATION, et al.
v.
DELACROIX CORPORATION, et al.
No. 89-CA-1945.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
*1245 Sidney L. Shushan, Barry E. Pike, Guste, Barnett & Shushan, New Orleans, for plaintiff, Nylka Land Co.
Hugh M. Wilkinson, Jr., Wilkinson & Wilkinson, New Orleans, for Delacroix Corp. and the Class of Royalty Owners Affecting Delacroix Acreage.
Charles E. McHale, Jr., Michael J. Furman, New Orleans, Ewell C. Potts, III, Chalmette, for the Heirs of John Foster (Foster Heirs and Hutchinson Heirs).
Before BYRNES, CIACCIO, and WILLIAMS, JJ.
WILLIAMS, Judge.
Seneca Resources Corporation instituted this concursus proceeding to determine the owners of certain immovable property, located in St. Bernard Parish, in order to distribute funds gained through several oil, gas and mineral leases operated by Seneca. At issue is the validity of the sale of the subject property on June 22, 1912 for nonpayment of 1911 taxes. The owner at that time was NYLKA Land Company, which now claims that the sale is null because it never received notice. The trial court rejected this argument and found that Nylka had lost any and all claims through prescription. We affirm.
The property in question, "All of Section 34, Township 15 South, Range 17 East", was acquired by Nylka on June 28, 1911 at a tax sale after the owners, John and Edith Mankel, failed to pay their 1910 property tax. Due to lack of a bid at the public auction, the State of Louisiana acquired the property on June 22, 1912 for the 1911 taxes assessed in the name of "John and Edith Mankel (his wife)." When Nylka failed to redeem the property (by paying the delinquent taxes within the space of one year), the State sold the property to Fletcher E. Webster on November 30, 1914 and issued to Webster a proces verbal deed. On January 15, 1915, the State issued a patent to Webster. Appellees derive their title from this patent.
Though the crux of Nylka's argument is grounded in a recent United States Supreme Court case, validity of the sale under state law is first addressed.

I. Validity Under State Law

A. Redemption and Prescription

At the time of the 1912 sale, Nylka could have recovered the property, regardless of the adequacy of the assessment, notice and sales procedures, "by paying the price given, including costs, and twenty per cent thereon," within the space of one year, pursuant to Article 233 of the Louisiana Constitution of 1898 (applicable herein). Nylka failed to redeem the property.
After the lapse of the redemptive period and within the three year prescriptive period, Nylka could have attacked the sale for cause, pursuant to Article 233.[1]
Because Nylka failed to attack the 1912 sale until the instant suit was filed, on August 24, 1984, its claim may only be sustained if it proves that the sale was an absolute nullity from its inception.[2] Because *1246 the property is admittedly marshland, possession (which might otherwise toll the running of prescription) is not an issue.
Nylka claims that the sale is absolutely null because it did not receive notice.
First, Nylka claims the description of the property in advertisement for sale was faulty. In Hubbs v. Canova, 401 So.2d 962 (La.1981), the Louisiana Supreme Court held that a suit to declare a tax sale null and void was not barred by prescription where the property description was so faulty as to constitute lack of assessment. The Court stated:
When there is an error in the description of land to be assessed, the tax sale is still valid if the land can be reasonably identified or the description furnishes the means for identification. If the description is defective, resort may be had to evidence outside the assessment roll or tax deed to identify the property, provided such evidence unmistakably establishes the identity of the property. The question is whether the description would enable an interested party to identify the property sought to be assessed and conveyed.
(Citations omitted.)
The sheriff's proces verbal deed states that the property was advertised for sale in the St. Bernard Voice from May 18, 1912 to June 22, 1912, and indicates the property was described as "All of Sec. 34 T.S. 15 S R 17 E Contg. 390 acres." The trial court found that the property description was not defective or erroneous, but merely shortened. We agree with the trial court finding that the description of the property was sufficient to provide notice had Nylka been interested in redemption.
Nylka also argues that the 1911 tax roll shows the property was assessed to John and Edith Mankel, and therefore it could not have received notice of delinquency.
The assessment roll for 1911 taxes was based on the conveyance records of January 1, 1911. During the relevant period, the assessor was required to complete his tax rolls by May 1st of the tax year. The tax deed to Nylka was not executed until June 28, 1911 and not recorded until July 13, 1911.
The proces verbal deed states that the sheriff strictly complied with every requirement of the law in regard to the sale, including Act 170 of 1898 and more specifically with Sections 51 through 54 of that act. The proces verbal states the sheriff delivered notice as required by Sections 50, 51 and 52 of Act 170. These sections require notice to the taxpayer by certified mail, and in some instances by publication, that his failure to pay delinquent taxes will result in the sale of his property. Section 53, as amended and re-creation by Section 1 of Act 315 of 1910, states that "for the purpose of taxation and tax sales it shall be sufficient to assess and advertise all property in the name of the person or persons... who at the time the assessment was made, appeared to be the owners thereof upon the books ... of the Recorder's Office."
Though the statement that the sheriff complied with Section 53 would indicate that the property was assessed to the owner on the books of the Recorder's office, the proces verbal also states that the property was "assessed to the following named persons as per assessment rolls on file in [the sheriff's] office and are described as follows: ... John and Edith Mankel (his wife) All of Sec. 34 T.S. 15 S R17 E Contg. 390 acres." Thus the proces verbal appears to be ambiguous as to whom notice was mailed.
However, other evidence clearly shows that Nylka received actual notice prior to the running of prescription, and perhaps prior to the lapse of the redemption period. Through error, the property was again adjudicated to the State in 1913. The sheriff's proces verbal, filed in the clerk's office on June 30, 1913, states that notice was published in the St. Bernard Voice from *1247 May 24, 1913 to June 28, 1913 as follows: "Nylka Land Co., Ltd.... All of Sec. 34 in T. 15 S.R. 17 East containing 390 acres." The proces verbal further states that notice was provided as required by Act 170 of 1898, Sections 50 through 53. Thus, Nylka received actual notice prior to June 28, 1913 that the subject property would be sold for failure to pay taxes. Nylka cannot now assert invalidity of that notice based on the fact that this sale was cancelled in 1938.[3]

B. Laches

The trial court notes that Nylka acquired the property in a tax sale and therefore was clearly aware that failure to pay a property tax would result in forfeiture of its property. The court opined that Nylka's failure to pay the taxes was an abandonment of the property and its belated claim was the result of the mineral royalties. The court notes:
The genius of our law does not favor the claims of those who have long slept on their rights and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the court for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement.
Valvoline Oil Co. v. Krauss, 335 So.2d 64, 73 (La.App. 3rd Cir.1976), quoting Lafitte, Dufilho & Co. v. Godchaux, 35 La.Ann. 1161, 1163 (1883).
While the claimant in Valvoline waited 25 years to assert his claim, also in a concursus proceeding, Nylka waited over 70 years to do so. Particularly in light of the proces verbal of 1913 showing actual notice to the tax debtor, Nylka will not be allowed to invalidate the 1912 tax sale on the technicalities it asserts.

II. Federal Law
Nylka relies on Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) to support its argument that the lack of notice renders the sale absolutely null. In Mennonite, the mortgagor failed to pay the tax on the mortgaged property. He was notified of the delinquency and subsequently of the pending tax sale. The mortgagee received no notice. The mortgagor continued to make mortgage payments for two years after the tax sale, so the mortgagee did not become aware of the sale until the two year redemption period (under Illinois law) had run. The Court found the mortgagee had an interest in the property sufficient to require actual notice where the mortgagee was easily ascertainable. The Court noted that prior to an action which will affect an interest in life, liberty or property protected by the Due Process Clause of the Fourteenth Amendment, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." 462 U.S. at 795, 103 S.Ct. at 2709, 77 L.Ed.2d at 185.
In light of the adequate property description in the St. Bernard Voice, both in 1912 and in 1913, and in light of the fact that Nylka took no action to recover the property for more than seventy years after it received actual notice of its delinquency and of the pending sale, the trial court's finding that Nylka's claims have prescribed does not violate any standard set forth in Mennonite. There is no error in the trial court's finding that Nylka's claims have prescribed and that the 1912 tax sale is not a nullity.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] Article 233 provides in relevant part:

No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption has expired... or within three years from the date of recordation of the tax deed, if no notice is given.
[2] Defects which render a tax sale either relatively null or absolutely null are discussed in Warner v. Garrett, 268 So.2d 92, 97 (La.App. 1st Cir.) writ den., 263 La. 987, 270 So.2d 123 (1972):

It is well established that certain nullities attending tax sales are relative and are cured by the three and five year prescriptive periods provided by LSA-Const., art. 10, Sec. 11, and the statutes enacted by the legislature from time to time. Among these are failure to properly advertise (Robinson v. Williams, 45 La.Ann. 485, 12 So. 499); lack of notice (Skannal v. Hespeth, 196 La. 87, 198 So. 661); and sale for taxes which have prescribed (Fellman's Heirs v. Interstate Land Co., 163 La. 529, 112 So. 405). Defects which have been held to render tax sales absolutely null, and therefore incurable by prescription, include prior payment of taxes and dual assessment (Gremillion v. Daigrepont, La.App., 47 So.2d 363); lack of assessment (Tillery v. Fuller, 190 La. 586, 182 So. 683); inadequate description (Yuges Realty v. Jefferson Parish Developers, 205 La. 1033, 18 So.2d 607); and fraud (Wall v. Hamner, 182 La. 1049, 162 So. 769).
[3] The trial court points out that the evidence indicates that Nylka could have been made aware of the sale when it redeemed Section 35 on May 22, 1936 because the conveyance history of Section 34 appears in the same conveyance book, directly above and on the same page as that of Section 35.